IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| **BROOKLYN SPECIALTY INSURANCE COMPANY RISK RETENTION GROUP INC.,** | : : : : | |
| Plaintiff, | : : | |
| | : | No. 3:22-CV-06 (CAR) |
| v. | : : | |
| **BISON ADVISORS, LLC,** | : : | |
| Defendant. | : : : | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Brooklyn Specialty Insurance Company Risk Retention Group, Inc., ("BSIC") filed this declaratory judgment action to determine its payment obligations related to a consent judgment entered into by its policyholder, Paper Impex USA, Inc. ("Paper Impex"). Currently before the Court are BSIC's and Bison Advisors, LLC's ("Bison" or the "Special Administrator") Motions for Summary Judgment. Having considered the parties' arguments, the record, and the relevant law, BSIC's Motion [Doc. 23] is **GRANTED**, and Bison's Motion [Doc. 29] is **DENIED**.

### BACKGROUND

On March 22, 2019, Peggy Lynn Evans and Jackie Lynn Evans ("the Evans") died in a motor vehicle accident (the "Accident") involving a tractor trailer owned by Paper

1

Impex and leased to Raptor Auto Shipping Inc. ("Raptor").[1] Bunyod Kushnazarov ("Kushnazarov")—a Raptor employee—was operating the tractor trailer that collided with the Evans.[2]

BSIC issued the subject automotive liability insurance policy to this action, Policy No. JP-1-112018 (the "Policy"), to Paper Impex effective November 12, 2018, to May 3, 2019.[3] Coverage under the Policy is limited to vehicles included on the Policy's list of scheduled vehicles.[4] Neither the truck nor the trailer involved in the Accident were listed on the schedule.[5] Likewise, coverage under the Policy is limited to drivers included on the Policy's list of scheduled drivers. Kushnazarov was not listed on the Policy's schedule of drivers.[6]

The Policy contains a Form MCS-90 Endorsement. When applicable, coverage under the MCS-90 Endorsement is limited to $750,000.00.[7] Under the MCS-90 Endorsement, Paper Impex "agrees to reimburse [BSIC] for . . . any payment that [BSIC] would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."[8]

---

[1] Bison's Response to BISC's Statement of Undisputed Material Facts, [Doc. 28-1] at ¶ 3, 4.
[2] *Id*. at ¶ 6.
[3] BISC Policy No. JP-1-112018, [Doc. 23-3] at p. 8; Bison's Response to BISC's Statement of Undisputed Material Facts, [Doc. 28-1] at ¶ 12.
[4] Bison's Response to BISC's Statement of Undisputed Material Facts, [Doc. 28-1] at ¶ 13.
[5] *Id*. at ¶ 14.
[6] *Id*. at ¶ 15.
[7] *Id*. at ¶ 17.
[8] *Id*. at ¶ 18.

2

Bison, formerly known as Armis Advisers, is the Special Administrator and Personal Representative of the Evans' estate.[9] The Special Administrator filed a wrongful death suit against Kushnazarov, Paper Impex, Raptor and RPM Freight Systems, LLC ("RPM") (collectively, "the Underlying Lawsuit Defendants") in the United States District Court for the Eastern District of Arkansas, Case No. 2:19-CV-143-JM (the "Underlying Lawsuit").[10] In the Underlying Lawsuit, the Special Administrator brought claims against Paper Impex and Raptor for wrongful death, ordinary negligence, negligent hiring, negligent training, negligent supervision, and negligent retention.[11] Paper Impex was not insured under the Policy for the claims asserted against it in the Underlying Lawsuit.[12]

On or about December 3, 2021, the Special Administrator entered into a Compromise, Settlement and Release Agreement with the Underlying Lawsuit Defendants (the "Settlement Agreement").[13] The Settlement Agreement contains all terms of the Special Administrator's agreement to settle the Underlying Lawsuit against Kushnazarov, Paper Impex, Raptor, and RPM.[14] In the Settlement Agreement, the Special Administrator released and discharged Paper Impex from "all claims, demands, causes of action, known or unknown, liabilities and damages, of any kind, at common law,

---

[9] *Id.* at ¶ 2.
[10] *Id.* at ¶ 10.
[11] *Id.* at ¶ 11.
[12] *Id.* at ¶ 16.
[13] Bison's Response to BISC's Statement of Undisputed Material Facts, [Doc. 28-1] at ¶ 22
[14] *Id.* at ¶ 23.

statutory, or otherwise, which presently exist or which may arise in the future, directly or indirectly, attributable to the Incident of March 22, 2019 made the basis of the Lawsuit."[15] The Special Administrator agreed to indemnify Paper Impex "for any loss or damage (including but not limited to contribution and/or indemnity) of any nature which anyone else may claim arising out of the above referenced accident."[16] Thereafter, a Consent Judgment and Order of Dismissal with Prejudice was entered in the Underlying Lawsuit (the "Consent Judgment").[17]

At the time of the Accident, Raptor was insured under an insurance policy issued by ATG Insurance Risk Retention Group, Inc. ("ATG") which provided $1,000,000.00 in liability limits (the "ATG Policy").[18] Paper Impex was an additional insured under the ATG Policy, and ATG provided a defense and indemnity to Paper Impex in the Underlying Lawsuit.[19] ATG paid a sum in excess of $900,000.00 to the Special Administrator or the Special Administrator's attorneys on the Special Administrator's behalf.[20] In total, the Special Administrator received payments in excess of $2,000,000.00 from insurers in settlement of the Underlying Lawsuit.[21]

---

[15] *Id.* at ¶ 29.
[16] *Id.* at ¶ 32.
[17] *Id.* at ¶ 30.
[18] *Id.* at ¶ 19.
[19] *Id.* at ¶ 20, 21.
[20] *Id.* at ¶ 32.
[21] *Id.* at ¶ 27.

4

BSIC did not provide Paper Impex a defense or indemnity in connection with the Underlying Lawsuit, was not involved in the settlement negotiations in the Underlying Lawsuit, and did not consent to the release of Paper Impex in the Settlement Agreement.[22] Nevertheless, the Special Administrator originally demanded that BSIC pay the $750,000.00 consent judgment against Paper Impex.[23] But on November 11, 2022, counsel for the Special Administrator informed counsel for BSIC that it is "not demanding that [BSIC] pay the $750,000 Consent Judgment against Paper Impex under [BISC's] Policy's Form MCS-90 Endorsement issued to Paper Impex."[24]

BISC moves for summary judgment seeking a declaration that it has no obligation to pay any portion of the Consent Judgment entered against Paper Impex under the terms of the Policy's MCS-90 endorsement. Bison cross moves for summary judgment contending no case or controversy exists to allow the Court to exercise jurisdiction under the Declaratory Judgment Act.

## LEGAL STANDARD

Summary judgment is proper if the movant "shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."[25] Not all factual disputes render summary judgment inappropriate; only a genuine issue

---

[22] Declaration of Rick Shaw, [Doc. 23-3] at ¶ 9.
[23] Complaint, [Doc. 1] at ¶ 24; Answer, [Doc. 9] at ¶ 24.
[24] *See* Declaration of T. Ryan Scott, [Doc. 28-4] at ¶ 2.
[25] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

of material fact will defeat a properly supported motion for summary judgment.[26] This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.[27]

On summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party; the Court may not make credibility determinations or weigh the evidence.[28] The moving party "always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.[29] If the moving party discharges this burden, the burden then shifts to the nonmoving party to respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence creates a genuine issue of material fact or that the moving party is not entitled to a judgment as a matter of law.[30] This evidence must consist of more than mere conclusory allegations or legal conclusions.[31]

The standard of review for cross-motions for summary judgment does not differ

---

[26] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).
[27] *See id.* at 249-52.
[28] *See id.* at 254-55; *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir. 1992).
[29] *Celotex,* 477 U.S. at 323 (internal quotation marks omitted).
[30] *See* Fed. R. Civ. P. 56(e); *see also Celotex,* 477 U.S. at 324-26.
[31] *Avirgnan v. Hull,* 932 F.2d 1572, 1577 (11th Cir. 1991).

from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.[32] The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration.[33] The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[34] Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts.[35]

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law."[36] Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'"[37] "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-

---

[32] *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).
[33] *Id.*
[34] *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)).
[35] *Id.* at 1555-56.
[36] *Kerr v. McDonald's Corp.*, 427 F.3d 947, 957 (11th Cir. 2005) (internal quotations omitted).
[37] *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ens. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249-50).

7

moving party."[38] Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party" then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact."[39]

## DISCUSSION

### I. Bison's Motion for Summary Judgment

Bison moves for summary judgment challenging the Court's jurisdiction under the Declaratory Judgment Act.[40] Specifically, Bison contends that because it informed BSIC that it is "not demanding that [BSIC] pay the $750,000 Consent Judgment against Paper Impex under [BISC's] Policy's Form MCS-90 Endorsement,"[41] no case or controversy exists. The Court disagrees.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[42] The "case or

---

[38] *Id.* (citing *Anderson*, 477 U.S. at 252).
[39] *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).
[40] The Court notes Bison's Motion was untimely filed. *See* Order to Show Cause, [Doc. 32]. The Court will nevertheless address Bison's Motion on the merits.
[41] *See* Declaration of T. Ryan Scott, [Doc. 28-4] at ¶ 2.
[42] 28 U.S.C. § 2201(a).

8

controversy must exist at the time the declaratory judgment action is filed."[43] To establish a justiciable case or controversy, the party seeking a declaratory judgment must show a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.[44] There is no bright line rule distinguishing declaratory judgment actions that satisfy the Article III case-or-controversy requirement from those that do not.[45] "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[46]

The "controversy" may not be "'conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of injury.'"[47] "The concept of adverse legal interests requires that there be a dispute as to a legal right, such as an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring, if not for the fact that the declaratory plaintiff had preempted it."[48]

---

[43] *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 635 (11th Cir. 2015) (citing *GTE Directories Publ'g. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995)).
[44] *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941). *See also Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95, 113 S. Ct. 1967, 1974 (1993) (explaining party seeking declaratory judgment has burden of establishing justiciability).
[45] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).
[46] *Am. Ins. Co. v. Evercare Co.*, 430 F. App'x 795, 798 (11th Cir. 2011) (quoting *GTE Directories Pub. Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir. 1995)).
[47] *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999)).
[48] *Creative Compounds, LLC v. Starmark Labs.*, No. 2010-1445, 651 F.3d 1303 (Fed. Cir. June 24, 2011) (quoting *Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1374-75 (Fed. Cir. 2011)).

Here, a justiciable case or controversy existed at the time BSIC filed this declaratory judgment action. This action arose because Bison originally demanded that BSIC pay the $750,000.00 Consent Judgment against Paper Impex.[49] Bison's decision to later inform BSIC—nearly ten months after it filed this action—that it is "not demanding that [BSIC] pay the $750,000 Consent Judgment against Paper Impex under [BISC's] Policy's Form MCS-90 Endorsement issued to Paper Impex"[50] does not extinguish the justiciable case or controversy. In *Household Bank v. JFS Grp.*, the Eleventh Circuit reversed the district court's dismissal of a declaratory action for lack of subject matter jurisdiction and noted:

> "Defendants have not entered into a settlement agreement or filed a release of their federal claims in this matter, nor did they request the district court to enter judgment against them. Regardless of their present renunciation, without a binding, judicially enforceable agreement, the [Defendant] could still put [Plaintiff] to the task of defending against the non-frivolous federal law claims alleged in this declaratory judgment action. We agree with the Second Circuit that '[a] judicial declaration that [the Defendants are] barred from asserting the [federal] claims would both settle the matter between these parties once and for all and dispel all uncertainty regarding the liability of [the Plaintiffs] for these claims.'"[51]

Additionally, "even if the declaratory relief sought by plaintiff hinges on liability that may never actually arise, the Court still has discretion to entertain the present action."[52]

---

[49] Complaint, [Doc. 1] at ¶ 24; Answer, [Doc. 9] at ¶ 24.
[50] *See* Declaration of T. Ryan Scott, [Doc. 28-4] at ¶ 2.
[51] *Household Bank v. JFS Grp.*, 320 F.3d 1249, 1260 (11th Cir. 2003).
[52] *Owners Ins. Co. v. Advanced Sleep Techs., Inc.*, No. CV 121-086, 2022 U.S. Dist. LEXIS 48688, at *7 (S.D. Ga. Mar. 17, 2022)

As in *Household Bank*, Bison's non-binding representation that it was not demanding payment is insufficient to extinguish the justiciable case or controversy that existed when this action was filed. Thus, Bison's Motion for Summary Judgment must be denied.

## II.     BSIC's Motion for Summary Judgment

BSIC seeks a declaration that it has no obligation to pay any portion of the Consent Judgment entered against Paper Impex under the terms of the Policy's MCS-90 Endorsement. Bison did not respond to BSIC's arguments concerning the application of the Policy's MCS-90 Endorsement.

"The Motor Carrier Act of 1980 [MCA], in addition to deregulating the trucking industry and reducing barriers to entry, addressed safety issues and financial responsibility for trucking accidents."[53] "In particular, Congress addressed the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce."[54] The MCA specifically "require[s] certain interstate motor carriers to obtain an insurance policy containing a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence."[55] "Motor carriers transporting non-hazardous

---

[53] *Nat'l Specialty Ins. Co. v. Martin-Vegue*, 644 Fed. Appx. 900, 906 (11th Cir. 2016) (citation omitted).
[54] *Id*. (citations and quotations omitted).
[55] *Waters v. Miller*, 560 F. Supp. 2d 1318, 1320 (M.D. Ga. 2008) (citation and quotations omitted).

11

property [in interstate commerce] must demonstrate financial responsibility of at least $750,000," commonly through an MCS-90 endorsement.[56] "The MCS-90 endorsement is essentially 'suretyship by the insurance carrier to protect the public' and 'a safety net' that provides recourse from negligent authorized interstate carriers 'when other coverage is lacking.'"[57]

"Federal law controls the interpretation and operation of the MCS-90."[58] "While the Eleventh Circuit has not extensively analyzed this endorsement, a majority of courts treat 'the insurer's obligation under the MCS-90 endorsement as one of a surety.'"[59] "In that regard, this obligation is triggered only when: (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) the carrier's other insurance coverage is either insufficient to meet the federally-mandated minimums or non-existent."[60] "If a motor carrier's insurance pays a judgment satisfying the regulatory minimum, the goal of public financial responsibility has been accomplished and the endorsement does not apply."[61]

---

[56] *Martin-Vegue*, 644 Fed. Appx. at 906 (citing 49 C.F.R. § 387.9).
[57] *Cagle v. Wesco Ins. Co.*, Civil Action No. 2:21-CV-52-RWS, 2021 U.S. Dist. LEXIS 253756, at *9 (N.D. Ga. Dec. 6, 2021) (citing *Waters*, 560 F. Supp. 2d at 1321).
[58] *Martin-Vegue*, 644 Fed. Appx. at 906-07 (citing *CANAL Ins. Co. v. DISTRIBUTION Servs.*, 320 F.3d 488, 492 (4th Cir. 2003)).
[59] *Id*. (citing *Yeates*, 584 F.3d at 878 (collecting cases)).
[60] *Id*. (citing *Yeates*, 584 F.3d at 879); *see also T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 672 (5th Cir. 2001) (explaining that "the insurer's obligations under the MCS-90 are triggered when the policy to which it is attached provides no coverage to the insured").
[61] *Id*. (citing *Larsen*, 242 F.3d at 672).

Raptor's insurance paid a judgment to the Special Administrator which satisfied the regulatory minimum, and thus, the MCS-90 Endorsement does not apply. At the time of the Accident, Raptor was insured under the ATG Policy which provided $1,000,000.00 in liability limits—well above the $750,000.00 regulatory minimum.[62] Paper Impex was an additional insured under the ATG Policy, and ATG provided a defense and indemnity to Paper Impex in the Underlying Lawsuit.[63] On or about December 3, 2021, the parties reached a Settlement Agreement to resolve the Underlying Lawsuit.[64] Thereafter, a Consent Judgment and Order of Dismissal with Prejudice was entered in the Underlying Lawsuit.[65]

The Settlement Agreement contains all terms of the Special Administrator's agreement to settle the Underlying Lawsuit against Kushnazarov, Paper Impex, Raptor, and RPM.[66] Furthermore, the Special Administrator released and discharged Paper Impex from "all claims, demands, causes of action, known or unknown, liabilities and damages, of any kind, at common law, statutory, or otherwise, which presently exist or which may arise in the future, directly or indirectly, attributable to the Incident of March 22, 2019 made the basis of the Lawsuit,"[67] and agreed to indemnify Paper Impex "for any loss or damage (including but not limited to contribution and/or indemnity) of any nature

---

[62] Bison's Response to BISC's Statement of Undisputed Material Facts, [Doc. 28-1] at ¶ 19.
[63] *Id.* at ¶ 20, 21.
[64] *Id.* at ¶ 22.
[65] *Id.* at ¶ 30.
[66] *Id.* at ¶ 23.
[67] *Id.* at ¶ 29.

which anyone else may claim arising out of the above referenced accident."[68] In return, ATG paid a sum in excess of $900,000.00 to the Special Administrator or the Special Administrator's attorneys on the Special Administrator's behalf.[69] In total, the Special Administrator received payments in excess of $2,000,000.00 from insurers in settlement of the Underlying Lawsuit.[70]

Because ATG's $900,000.00 settlement payment satisfied the $750,000.00 regulatory minimum, "the goal of public financial responsibility has been accomplished," and the MCS-90 Endorsement contained in the BSIC Policy does not apply.[71] Therefore, BSIC is entitled to summary judgment and a declaration that it has no obligation to pay any portion of the Consent Judgment entered against Paper Impex under the terms of the Policy's MCS-90 Endorsement.

## CONCLUSION

For the reasons set forth above, Bison's Motion for Summary Judgment [Doc. 29] is **DENIED**, and BSIC's Motion for Summary Judgment [Doc. 23] is **GRANTED**.

**SO ORDERED,** this 14th day of September, 2023.

S/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[68] *Id*. at ¶ 32.
[69] *Id*. at ¶ 32.
[70] *Id*. at ¶ 27.
[71] *See Martin-Vegue*, 644 Fed. Appx. at 906-07 (citing *Larsen*, 242 F.3d at 672).